Georgianna MANOSH, Individually and as Administratrix of the Estate of Clifford Manosh,

v.

NEW ENGLAND TELEPHONE AND TELEGRAPH COMPANY.

Civ. A. No. 80–14.

United States District Court, D. Vermont.

Sept. 29, 1981.

David A. Williams, Wolchik & Williams, Morrisville, Vt., for plaintiff.

Joseph H. Badgewick, Ryan, Smith & Carbine, Rutland, Vt., for defendant.

## MEMORANDUM OF DECISION

HOLDEN, Chief Judge.

The plaintiff brings this action to recover accidental death benefits allegedly owed to her by the defendant, her husband's employer at the time of his death in March, 1979. Jurisdiction is predicated on 28 U.S.C. § 1332, the plaintiff being a Vermont resident and the defendant, a New York corporation. The defendant asserts that the plaintiff is not entitled to the accidental death benefits and has moved for summary judgment. From the oral arguments presented to the court and the post-hearing submissions, the following facts appear without dispute:

Clifford Manosh had been employed by the New England Telephone and Telegraph Company (the Company) for twenty-three years. He held the position of foreman in the Plant Department in Montpelier, Vermont when he was murdered on March 26, 1979. In accordance with the "Plan for Employees' Pensions, Disability Benefits and Death Benefits" (the Benefit Plan), a noncontributory plan maintained by the Company, Manosh's widow, the plaintiff in this action, received a lump sum sickness death benefit, both life insurance and "basic accidental death" insurance payments, and continues to receive a survivor's annuity.[1] Her claim for "on-the-job" accidental death benefits was denied, and she instituted this suit to recover those on-the-job accidental death benefits.

In August, 1979 the Company instituted an investigation of the facts which led to the death of Clifford Manosh. This investigation was initially used in preparation of a report for the related workmen's compensation claim. It appears from the report that Manosh was employed by the Company at Montpelier, Vermont. He was shot to death on the Cady Falls Road in Morristown, Vermont on March 26, 1979. His body was found at 6 o'clock p. m. that evening in an automobile belonging to Earlene Camley, the wife of his assailant Seth Camley. Mrs. Camley's body was found nearby. The report indicates that death occurred between 3 and 4 o'clock on the afternoon of March 26. Seth Camley was subsequently tried in the Superior Court of the State of Vermont and found guilty of the murder of his wife and the plaintiff's decedent. The report submitted to the Benefit Committee is corroborated by the testimony produced at the murder trial in December, 1979 to the effect that Manosh and Mrs. Camley had been having "an affair" for some time.

The investigative report states "there was no Company business that would take Manosh to the scene." The decedent's su-

pervisor, Wayne Murray, reported that the Company had no work scheduled in the area and had not assigned any work to be performed by Manosh in the locale. The employee had not called his supervisor to inform him that he would be in the area of where his death occurred.

The report concluded that Clifford Manosh was not on company business at the time of his death and was "involved in personal activity on company time." The report was submitted to the Employee Benefit Committee in processing the plaintiff's claim for accidental death benefits. The Benefit Committee found that Manosh's death had not resulted from accidental injury arising out of and in the course of his employment, and determined that the requested benefits were not payable.

The defendant's attorney notified plaintiff's attorney of the unfavorable decision, sent them a copy of the minutes of the meeting, and informed them of the right to have the decision reconsidered by the Review Committee and to submit written information which might support their position. The plaintiff requested a review, but offered no additional information for consideration. The Review Committee sustained the denial of the on-the-job accidental death benefits.

The actions taken by the Benefit and Review Committees are based on the provisions of Section of the Plan for Employees' Pensions, Disability Benefits and Death Benefits, April 1, 1979. It is there provided that benefits will be paid "(i)n the event of the death of any employee, occurring on or after October 1, 1971, and resulting from accidental injury arising out of and in the course of employment by the Company, hereinafter referred to as death by accident."

In her original complaint, the plaintiff alleged that defendant breached its employment contract with plaintiff's decedent by its refusal to pay the accidental death benefits. The defendant contends that the un-

---

1. Plaintiff received a Sickness Death Benefit of $25,100, Company Group Life Basic and Supplementary Life Insurance of $52,000 and Basic Accidental Death and Dismemberment Insurance of $26,000, plus $128.22 in interest.

disputed facts show that it fully complied with the terms of that contract, entitling it to summary judgment in its favor. The section of the Benefit Plan regulating the disposition of claims for benefits contains the following clause:

4. The Employees' Benefit Committee, or the Review Committee when it reviews a denial of a claim, shall determine conclusively for all parties all questions arising in the administration of the plan.

■ Where a private pension plan contains such a provision, the role of the judiciary in reviewing the determination made by the designated authority is narrowly confined. *Riley v. MEBA Pension Trust*, 570 F.2d 406, 410 (2d Cir. 1977). This policy allows efficient, certain and inexpensive disposition of claims for benefits. *See Local 2222 v. New England Telephone*, Civ. No. 75–2818–MA at 5 (D.Mass. June 5, 1980). The court may determine only whether such a decision was made in good faith and not through arbitrary, capricious or fraudulent action. *Glover v. South Central Bell Telephone*, 644 F.2d 1155, 1157 (5th Cir. 1981); *Wyper v. Providence Washington Insurance Co.*, 533 F.2d 57, 62 (2d Cir. 1976).

■ The propriety of summary judgment in this case thus turns on whether a factual issue exists as to the possibility of fraudulent or arbitrary disposition of plaintiff's claim for the accidental death benefits. The plaintiff, not having alleged such activity in her original complaint, now seeks to amend her pleading to contain such an averment. In support of this proposed amendment, she states that she was given no prior notice of the Benefit Committee's meeting, that she was not given the opportunity to appear personally before the Review Committee or to "disqualify committee members for interest."

■ While these procedural rights may exist in public administrative agency proceedings, the court is not aware of any controlling authority which had applied those requirements to private pension fund proceedings in derogation of the widely established rule under which the court must refrain from interference so long as the fund administrators follow their announced procedures and arrive at a decision reasonably supported by the facts before them. *See Lugo v. Employees Retirement Fund*, 529 F.2d 251, 156 (2d Cir. 1976); *Paterson v. Southwest Bell Telephone Company*, 411 F.Supp. 79, 87 (D.Okl.1976).

■ The plaintiff has nowhere alleged, nor do the facts show, that the Company in any way deviated from the procedures for handling claims set forth in the Benefit Plan. Nor is it unclear why the committees arrived at their respective determinations. The initial denial of the plaintiff's claim for the accidental death benefits was made on the basis of an investigative summary which reported discussions with three Company employees, each of whom independently stated that no Company work was scheduled for the location and time where Clifford Manosh was killed. The cause of his death, and the circumstances surrounding it, which had been the subject of a state murder trial conducted prior to the Benefit Committee's decision, all support the conclusion of the Committee that his death did not arise out of and in the course of employment, as required by Section 7 of the Benefit Plan, and thus did not qualify his widow, the plaintiff, for the benefits she sought.

When given the opportunity to present facts which might cause this conclusion to be reversed upon review, the plaintiff came forward with none. Nor has she, in the time which has elapsed since then, presented any facts to show that the committees could not fairly have made their determinations. The court cannot assume that such facts exist, and the record is void of any evidence upon which a trier of fact could find that the decision was fraudulent or arbitrary. Despite the plaintiff's tragic situation, no issue of fact remains to be decided. Because the uncontested facts do not show that the defendant breached any contractual obligation to the plaintiff, the defendant's motion for summary judgment is granted.

It is so ORDERED.